947 F.2d 955
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 ZIONS FIRST NATIONAL BANK, N.A., as Indenture Trustee for
Noteholders of CFS Fox River, Ltd., Plaintiff-Appellee,
v.
Carl M. FISHER, D.O.; Rachel C. Fisher; Geoffrey O.
Hartzler; Robert W. Miley; W. Michael Pryor;
Elvin L. Shelton, Defendants-Appellants,
and
Richard L. Kolp, James A. Murray, Defendants.
 No. 90-4172.
 United States Court of Appeals, Tenth Circuit.
 Oct. 29, 1991.
 
 Before MCKAY, Chief Judge, LOGAN and JOHN P. MOORE, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This is an appeal by certain investors in a bankrupt limited partnership from a judgment of the district court which held the investors liable for the payment of a note pledged by the partnership as security for loans to the partnership. As a group, the investors raised several defenses which the district court held unavailing. In Zions First Nat'l Bank v. Bailey, No. 90-4087, (Keegan's Glen), we held the district court did not err in rejecting the claims of the Keegan's Glen defendants based on alleged security violations, failure of consideration, frustration of partnership purpose, and breach of fiduciary duty, among others. Because the common defenses claimed by the defendants in this case raise the same questions of law presented in Keegan's Glen, we affirm the district court's decision relating to these defenses in this case.
 
 
 2
 However, in addition to the defenses common to all the investors, Dr. W. Michael Pryor claimed he was no longer liable on the note because he had sold his interest to a third party. To allow the case to be joined on appeal with Keegan's Glen, the district court granted plaintiff's motion for summary judgment on this claim as well. Although the district court recognized Dr. Pryor's "novation" defense was not addressed in Keegan's Glen, it found Dr. Pryor's arguments without merit.
 
 
 3
 In 1984, Dr. Pryor became a limited partner in CFS Fox River, Ltd., a Utah limited partnership formed to acquire and operate an existing apartment complex located in Marietta, Georgia. Under the terms of the CFS Fox River Subscription Agreement and the Amended and Restated Limited Partnership Agreement of CFS Fox River, Ltd., Dr. Pryor purchased his limited partnership interest in Fox River by paying partially in cash and partially in a promissory note payable to Fox River.
 
 
 4
 His promissory note (Investor's Note and Security Agreement) obligated him to pay the balance of his capital contribution in installments due on February 15, 1985, and February 15, 1986. Dr. Pryor made his February 1985 payment, and in 1986 he sold his partnership interest to Mr. Dean Price, a CFS sales representative. By the terms of the sale, Dr. Pryor conveyed to Mr. Price all his "right, title and interest."
 
 
 5
 Meanwhile, Fox River borrowed money from twenty-two investors (Noteholders) in exchange for which Fox River executed indenture notes secured, in part, by Dr. Pryor's Investor's Note. Fox River and appellee, Zions First National Bank, then executed an indenture agreement by which Zions agreed to serve as indenture trustee for the Noteholders.
 
 
 6
 Subsequent to the sale of Dr. Pryor's interest to Mr. Price, Fox River defaulted on its payments to its Noteholders, and the apartment complex was lost through foreclosure. Zions, in its representative capacity as Indenture Trustee for the Noteholders, commenced efforts to collect the limited partners' unpaid capital contributions due under their Investor's Notes which had been pledged to the Noteholders as collateral.
 
 
 7
 Believing his obligation to pay the 1986 installment was terminated by the sale to Mr. Price, Dr. Pryor declined to pay. The district court held on cross-motions for summary judgment that Dr. Pryor was liable for the 1986 installment.
 
 
 8
 Both the Investor's Note and the investor-partnership Security Agreement which Dr. Pryor signed are silent regarding transferability. The Subscription Agreement mandates that any transfer of partnership units can be made only in accordance with the Partnership Agreement.[1] The Partnership Agreement contains elaborate requirements for both the transfer of partnership interests[2] as well as for substitution of a limited partner.[3]
 
 
 9
 Under the terms of the Partnership Agreement, for Dr. Pryor to substitute Mr. Price as a limited partner, Dr. Pryor would have had to comply with the five conditions specified in section 13(c) of the Partnership Agreement. Dr. Pryor presented no evidence whatsoever that he had made any attempt to comply with those requirements. The only evidence offered on behalf of Dr. Pryor was that subsequent lists and minutes of partnership meetings contained Mr. Price's name instead of Dr. Pryor's. This evidence is at best ambiguous because of Dr. Pryor's failure to prove compliance with section 13(c). Moreover, it proves no more than Fox River's recognition that Dr. Pryor had transferred his partnership interest. It is not, as Dr. Pryor would have us conclude, evidence that Fox River recognized Mr. Price as a substituted Partner. This is a fatal deficiency in proof. Having failed to establish his satisfaction of the contractual conditions for an effective substitution of his partnership interests and responsibilities, Dr. Pryor remains obligated by the terms of the agreements and note he executed.
 
 
 10
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 FN1
 The exact language is as follows:
 
 
 [7]
 Transferability. The undersigned agrees not to transfer or assign this Agreement, or any of his interest herein, and further agrees that the assignment and transferability of the Units acquired pursuant hereto shall be made only in accordance with the Partnership Agreement
 
 
 FN2
 The Partnership Agreement provides as follows:
 
 
 [13]
 Transfer of Limited Partnership Interests
 (a) Requirements for Transfer --Subject to any restrictions on transferability required by law or contained in this Agreement, each Limited partner shall have the right to transfer (but not to substitute the assignee as a substitute Partner in his place, except in accordance with Paragraph 13(c) hereof), by a written instrument, to a person approved by the Corporate General Partner, the whole or any part of his Limited Partnership Interest, provided that (i) the transferee is a citizen and resident of the United States, (ii) the transferor delivers to the Corporate General Partner an unqualified opinion of counsel in form and substance satisfactory to counsel designated by the Corporate General Partner that neither the transfer nor any offering in connection therewith (a) violates any provision of any Federal or state securities law ... (iii) the transferee executes a statement that he is acquiring such Limited Partnership Interest ... for his own account for investment and not with a view to distribution, fractionalization, or resale thereof, (iv) the transferee delivers to the Corporate General Partner an instrument in form and substance satisfactory to the Corporate General Partner in which the transferee sets forth his direct and indirect ... ownership of stock of the Corporate General Partner or any corporate affiliate ... (vi) the Corporate General Partner consents to such transfer, ...
 R. II, pl. 93, II-27-II-28. Fox River's offering circular, the Private Placement Memorandum (PPM), also contains a summary of these conditions.
 
 
 FN3
 The Partnership Agreement provides as follows:
 
 
 [13]
 Transfer of Limited Partnership Interests
 ....
 (c) Requirements for Substitution --No transferee of the whole or a portion of a Limited Partner's Limited Partnership Interest shall have the right to become a substituted Partner in place of his assignor unless and until all of the following conditions are satisfied:
 (i) A duly executed and acknowledged written instrument of transfer approved by the Corporate General Partner has been filed with the Partnership setting forth the intention of the transferor that the transferee become a substituted Partner in his place.
 (ii) The transferor and transferee execute and acknowledge such other instruments as the Corporate General Partner may reasonably deem necessary or desirable to effect such substitution, including the written acceptance and adoption by the transferee of the provisions of this Agreement, and the execution, acknowledgment and delivery by the transferee of a power of attorney containing the powers provided for in Paragraph 10 of the Subscription Agreement, the form of which is an exhibit to the Memorandum, which, interalia, shall provide for the assumption of all the obligations under the Notes of the transferor which shall become due and payable after the date of such transfer.
 (iii) The written consent of the Corporate General Partner to such substitution....
 (iv) A reasonable transfer fee has been paid to the Partnership....
 (v) An appropriate amendment of the Certificate has been duly filed and recorded....
 R.II, pl. 93, at II-28-II-29. Fox River's offering circular, the Private Placement Memorandum (PPM), also contained a summary of these requirements.